MICKEY L. RHOADES, APPELLEE, V.
MARY JO RHOADES, APPELLANT.
605 N.W.2d 454

Filed February 4, 2000.    No. S-98-567.

Michael B. Lustgarten, of Lustgarten & Roberts, P.C., for appellant.

Thomas C. Green II and Rodney G. Gnuse, of Gnuse Law Offices, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

Mary Jo Rhoades appeals from the dismissal of her application to modify the child support obligation of Mickey L. Rhoades, her former spouse. The principal issue is whether the district court erred in permitting Mickey, a self-employed truck-

driver, to deduct a portion of the cost of a truck-tractor unit which he purchased in 1996 from the income from self-employment shown on his income tax return in order to arrive at the net income upon which his child support obligation should be calculated under the Nebraska Child Support Guidelines. We conclude that the district court abused its discretion in permitting the deduction and therefore reverse, and remand for further proceedings.

## FACTS

Mickey and Mary Jo were married May 7, 1977, in Valley, Nebraska. They are the parents of two children, a son born April 17, 1978, and a daughter born January 13, 1982. The marriage was dissolved by the district court for Douglas County on May 17, 1993. Pursuant to the terms of the decree, custody of the minor children was awarded to Mary Jo, and Mickey was ordered to pay child support in the amount of $600 per month while both children were minors and $400 a month thereafter until the younger child reached the age of majority.

Mary Jo filed an application to modify this child support obligation on December 22, 1997. At that time, one of the children had reached majority. In her application for modification, Mary Jo alleged that there had been a material change in circumstances because of a significant increase in Mickey's income and because of the implementation of the new Nebraska Child Support Guidelines on January 1, 1996.

A hearing was held on the application on May 18, 1998. The evidence established that Mary Jo had been a self-employed hairdresser for 15 years and that Mickey had been a self-employed truckdriver for 25 to 30 years. Mickey testified that he currently contracts with BTI Special Commodities to haul loads using his personally owned tractor. It is necessary for him to have a reliable tractor because he frequently transports time-sensitive materials, and he therefore tries to purchase a new tractor every 5 to 6 years.

Mickey purchased a new tractor in 1996. On February 23, 1996, he executed a promissory note in the amount of $76,215.58, payable over 60 months, to finance a portion of the purchase price, obligating him to make monthly payments of

$1,661.70. He deducts the interest on this loan as a business expense in calculating his net profit from self-employment on his federal income tax return. His returns reflected an interest expense deduction of $6,603 in 1996 and $6,859 in 1997. In addition, he claimed depreciation on the tractor in the amount of $22,700 in 1996 and $12,791 in 1997.

Each party offered child support calculations and supporting evidence which was received by the court without objection. Mary Jo's calculation was based upon average net income for both parties for 1996 and 1997. She arrived at a combined monthly net income of $3,674.42, resulting in total monthly support for one child in the amount of $857 as determined by table 1 of the Nebraska Child Support Guidelines. She calculated Mickey's share of this obligation to be $693.38, representing 80.91 percent of the total.

Mickey's calculations were based upon his average income for the years 1995 through 1997. He added his claimed depreciation back into net income for purposes of determining support income, as required by paragraph D of the Nebraska Child Support Guidelines. However, he then deducted one-sixth of the actual cost of the tractor purchased in 1996 less an anticipated trade-in allowance of $20,000 from his income for each of the years 1995 through 1997 in order to arrive at the income upon which he calculated the child support obligation. Using this method, he calculated the total monthly income of both parents to be $2,343.71, resulting in total monthly support for one child in the amount of $558. He further calculated his share of this obligation to be $349.98, representing 62.72 percent of the total.

The district court issued the following ruling from the bench at the close of the hearing:

> The decree in this matter was 5 years ago. The decree itself doesn't show what was taken into account for the determination of the child support which was calculated at that time. . . . While petitioner's expense for his truck doesn't fall neatly within the child support guidelines mandated by the Nebraska Supreme Court, the cost of purchase of the vehicle — the principal cost of it and the life of that truck is an actual expense to the petitioner and one that is ongoing. It is every bit an actual cost as those other costs that

are allowed to be deducted by the Nebraska Supreme Court. The interest is not a part of this request, the interest deduction. The other paper deductions are back — fed back into the cost determination and calculations.

Since the cost is actual, since it is necessary and since it is ongoing, the court finds that the petitioner's request to allow it to be played in and deducted from his net income is appropriate. The court will allow it.

The court therefore finds that the net income of the respondent has not appreciably or substantially changed over the years. The application, therefore, to modify the decree has not been met, And [sic] the application to modify is overruled and dismissed. Each party shall be responsible for their own attorney fees. That will be the judgment of the court.

The court then made the following journal entry: "Application to modify decree came on for hearing. Parties appear. Evidence adduced. Respondent fails to show material and substantial change in circumstances. Application to modify dismissed."

Mary Jo perfected a timely appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts.

## ASSIGNMENT OF ERROR
Mary Jo assigns that the district court abused its discretion in calculating Mickey's income for child support purposes.

## STANDARD OF REVIEW
Modification of the amount of child support payments is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Truman v. Truman*, 256 Neb. 628, 591 N.W.2d 81 (1999); *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998).

## ANALYSIS
A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was

entered. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999). Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Id.*

In her application for modification, Mary Jo alleged as material changes in circumstances (1) a significant increase in Mickey's earnings and (2) the implementation of the new Nebraska Child Support Guidelines on January 1, 1996. While the record contains Mickey's incomes for the years 1995 through 1997, it is silent as to his income at the time of the 1993 decree. Thus, Mary Jo did not meet her burden of proving a material change in circumstances based upon a change in Mickey's income between 1993 and 1997.

However, Mary Jo also alleged that the 1996 amendments to the Nebraska Child Support Guidelines constituted a material change in circumstances warranting an upward modification of Mickey's child support obligation. Paragraph Q of the guidelines, as amended, states:

> **Modification.** Application of the child support guidelines which would result in a variation by 10 percent or more, upward or downward, of the current child support obligation, due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months, establishes a rebuttable presumption of a material change of circumstances.

See *Dueling v. Dueling*, 257 Neb. 862, 601 N.W.2d 516 (1999). Based upon Mary Jo's calculations which were received in evidence, Mickey's child support obligation for one child under the current guidelines would be $693.38, an increase of approximately 73 percent over the amount set forth in the decree, which would establish a rebuttable presumption of a material change of circumstances under paragraph Q. Under Mickey's calculations, his obligation would be $349.98, which is 12.5 percent less than the original award.

Our task in determining whether the trial court erred in calculating Mickey's current wages, as asserted by Mary Jo, is

complicated somewhat by the fact that the record contains no wage calculation by the trial court. However, it is clear from the court's oral ruling that it accepted Mickey's contention that a portion of the cost of his tractor should be deducted from his income in order to arrive at his child support obligation. On oral argument before this court, the parties agreed that this issue is dispositive. We therefore address the question of whether the tractor cost was properly deducted in calculating Mickey's net income for purposes of child support modification.

In general, child support payments should be set according to the Nebraska Child Support Guidelines established pursuant to Neb. Rev. Stat. § 42-364.16 (Reissue 1998). *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999); *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991). The guidelines provide that in calculating child support, the court must consider the total monthly income, defined as the income of both parties derived from all sources except all means-tested public assistance benefits and payments received for children of prior marriages. *Dueling v. Dueling, supra*; *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999); Nebraska Child Support Guidelines, paragraph D. As a general rule, the income of a self-employed person can be determined from his or her income tax return. See, *Marr v. Marr*, 245 Neb. 655, 515 N.W.2d 118 (1994) (income of self-employed paving contractor derived from income tax returns); Nebraska Child Support Guidelines, paragraph D (requiring submission of tax returns to court in advance of hearing regarding child support). However, we have also held that income for the purpose of child support is not necessarily synonymous with taxable income. *Rauch v. Rauch, supra*; *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). Mickey's tax returns do not reflect a deduction for the actual cost of his tractor.

The Nebraska Child Support Guidelines are applied as a rebuttable presumption, and all orders for child support shall be established in accordance with the provisions of the guidelines unless the court finds that one or both of the parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. *Dueling v. Dueling, supra*; *State on behalf of Hopkins v. Batt, supra*. The guidelines permit devi-

ations under specified circumstances, including "whenever the application of the guidelines in an individual case would be unjust or inappropriate." Nebraska Child Support Guidelines, paragraph C(5).

In *Rauch v. Rauch, supra,* we held that although a father was entitled to take a loss from his taxable income due to his part-time farming losses, the trial court did not abuse its discretion when it deviated from the guidelines by not considering the farming losses in calculating the father's monthly income for child support purposes. We noted that the father had generated the losses by investing considerable sums of money in his farm, and reasoned that "[i]t would be unfair for [the father] to benefit from his choice to incur debt and build equity in his farm at the expense of his children." *Id.* at 264, 590 N.W.2d at 175. We concluded that under the circumstances of that case, the consideration of farming losses in arriving at the father's net income "might create a false impression of [the father's] financial situation and lead to an unjust award of child support." *Id.*

As in *Rauch,* the appropriate analytical framework in this case is whether the trial court erred in permitting a deviation from the child support guidelines with respect to the manner in which the father's income was computed. This case presents the converse of *Rauch,* i.e., whether the trial court abused its discretion in permitting a parent to compute his income by deducting an expense which is *not* deductible for income tax purposes. We recently restated in *Hajenga v. Hajenga,* 257 Neb. 841, 601 N.W.2d 528 (1999), that if a child support order deviates from the guidelines, the trial court must state the reasons for the deviation in the decree or order, or alternatively, it must complete worksheet 5 and file it in the court file. In addition, paragraph C of the guidelines requires that the decree or order state the amount of support that would have been required under the guidelines absent the deviation. Although the trial judge's ruling from the bench in this case can fairly be interpreted as allowing a deviation from the guidelines by permitting Mickey to deduct a portion of the cost of the tractor he purchased in 1996 in order to arrive at his net income, there is no statement of the amount of support which would be required under the guidelines absent the deviation. The only evidence in this regard is Mary Jo's

calculation of Mickey's support obligation in the amount of $693.38.

The tractor is a capital asset used by Mickey to generate income. In *Woods v. Woods*, 95 Ohio App. 3d 222, 223, 642 N.E.2d 45, 46 (1994), a self-employed truckdriver was permitted to deduct the monthly loan payments on his tractor-trailer rig in arriving at his net income for child support purposes under a guideline which defined "self-generated income" as " 'gross receipts received by a parent from self-employment . . . minus ordinary and necessary expenses incurred by the parent in generating the gross receipts.' " Our child support guidelines contain no similar language. Therefore, a deduction of the cost of the tractor from Mickey's income would be permissible only as a deviation from the guidelines where its disallowance would result in an "unjust or inappropriate" child support order. See Nebraska Child Support Guidelines, paragraph C(5).

The trial court found that allowing the deduction for the tractor cost was "appropriate," but did not specifically find that disallowance would be "unjust or inappropriate" so as to justify a deviation from the guidelines. As the trial court noted in its oral ruling, there was no showing that the tractor cost was deducted from Mickey's income in arriving at the child support obligation specified in the 1993 decree. Indeed, an inference can be drawn that it was not, because Mickey's 1998 calculations, which include the deduction, result in lower child support than ordered in the decree. Absent a showing that the tractor cost was deducted in determining Mickey's income for purposes of child support under the guidelines in effect at the time of the decree, we perceive no good reason why it should be deducted in calculating his child support obligation for purposes of making the comparison specified in paragraph Q of the guidelines. Unless the deduction was applied in both instances, the comparison is not meaningful or accurate. Thus, there was no basis for allowing the deduction of the tractor cost from Mickey's income as a deviation from the child support guidelines at the time of the modification proceeding because there was no evidence that such costs had been deducted in computing the original child support obligation which Mary Jo sought to modify, and therefore no showing that the deviation was necessary to avoid an unjust or inappropriate result.

Moreover, although Mickey argues on appeal that the tractor cost deduction is the equivalent of lease payments which would be deductible from his gross receipts for income tax purposes, he offered no evidence regarding the fair rental value of the tractor or the net effect which deducting lease payments would have on his taxable income from self-employment. Likewise, Mickey offered no evidence that increasing his child support obligation from $400 to the amount of $693.38 would subject him to economic hardship or otherwise achieve an unjust result. We note that he was paying a total of $600 per month before his older child reached majority in April 1997 and that the younger child for whom increased support is sought will reach majority in January 2001.

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998). In this case, we conclude that the district court abused its discretion in allowing a deviation from the current child support guidelines by permitting Mickey to deduct the cost of his tractor in computing his income for child support purposes in the modification proceeding in the absence of a showing that this deduction was utilized at the time of the original child support determination and that application of the deduction was necessary in order to avoid an unjust or inappropriate result. The allowance of the deduction deprived Mary Jo of a substantial right because without the deduction, the evidence established a rebuttable presumption that upward modification of child support was warranted under paragraph Q of the guidelines.

Accordingly, we reverse, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

MILLER-LERMAN, J., not participating.