PAMELA JOANN GRESS, APPELLEE AND CROSS-APPELLANT,
v. PATRICK RAYMOND GRESS, APPELLANT
AND CROSS-APPELLEE.
710 N.W.2d 318

Filed March 3, 2006.    No. S-05-007.

Louie M. Ligouri, of Ligouri Law Office, for appellant.

Stefanie S. Flodman and Steven J. Flodman, of Johnson, Flodman, Guenzel & Widger, for appellee.

Gerald M. Stilmock, of Brandt, Horan, Hallstrom, Sedlacek & Stilmock, guardian ad litem.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Patrick Raymond Gress appeals from an order of the district court for Otoe County dissolving his marriage to Pamela Joann Gress. He contests the court's order regarding custody, child and spousal support, property division, and attorney fees. Pamela cross-appeals, arguing that the duration of spousal support was inadequate. We affirm in part, and in part reverse and remand for further proceedings.

## FACTS

The parties were married on July 29, 1988. They had four children during the marriage. The couple's youngest son has Down

syndrome and requires special assistance and therapy. At all times during the marriage, Patrick was a self-employed farmer.

Pamela petitioned for dissolution in September 2003, after which Patrick left the marital home and began to reside with his parents on their adjoining family farm. In November, a temporary order was entered, placing custody of the children with Pamela and appointing counsel to represent the children's interests. Patrick exercised regular visitation at all times. Proceedings on the petition were held September 1 and 10, October 1, November 3, 5, and 19, and December 3, 2004. The parties' 14-year-old daughter testified that she wished to live with Pamela, and the children's counsel urged the court to keep the children together with Pamela. Each party called witnesses who testified to his or her fitness as a parent, and each introduced expert testimony regarding the other's mental health.

On December 15, 2004, the district court entered a decree of dissolution. The court awarded sole custody of the children to Pamela, with rights of visitation to Patrick. Pamela was awarded the marital home subject to its mortgage, and Patrick was awarded the farm property, machinery, and equipment. The marital debts were divided, and Patrick was ordered to pay $1,285 per month for child support, $1,000 per month for spousal support, and attorney fees. Other facts will be discussed in the relevant context.

## ASSIGNMENTS OF ERROR

Patrick assigns, restated, regrouped, and renumbered, that the court erred in (1) awarding sole custody of the minor children to Pamela and in determining Patrick's visitation, (2) its treatment of depreciated farm assets for purposes of calculating income and child support, (3) ordering spousal support for Pamela, (4) determining the property division, (5) ordering Patrick to pay attorney fees, and (6) admitting certain expert testimony. In her cross-appeal, Pamela assigns that the district court erred in ordering that alimony payments be terminated after 5 years.

## STANDARD OF REVIEW

An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. See, *Robb v.*

*Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004); *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. See, *Gangwish v. Gangwish, supra*; *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004); *Longo v. Longo*, 266 Neb. 171, 663 N.W.2d 604 (2003).

## ANALYSIS

### CHILD CUSTODY

Patrick first contends that the court erred in awarding custody of the parties' four minor children to Pamela. Alternatively, Patrick contends that the court erred in not ordering that his visitation schedule include Sundays on the weekends the children are not with him. Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Robb v. Robb, supra*; *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004). When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Id.*

In particular, Patrick argues that there are evidentiary issues surrounding the testimony of Pamela's expert regarding Patrick's mental health and the testimony of Patrick's expert regarding the validity of personality tests taken by Pamela. We need not address the evidentiary issues Patrick raises, however, because there is no indication that the court gave any particular weight to the testimony of either expert. Patrick never alleged that Pamela is an unfit parent, and the trial court expressly found that both Patrick and Pamela are fit parents to have custody of the children.

Our de novo review of the record reveals that there was evidence sufficient to support the court's finding that both parents are fit. Both parents had loving, caring relationships with the children prior to the dissolution action, as witnessed by friends and family. During the 15-month pendency of the action, the record shows that Pamela encouraged relationships between the

children and Patrick and that Patrick did not miss any of his opportunities for visitation.

When both parents are found to be fit, the inquiry for the court is the best interests of the children. See, *Robb v. Robb, supra*; *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). In determining the best interests of the child in a custody determination, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; (2) the desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning; (3) the general health, welfare, and social behavior of the minor child; and (4) credible evidence of abuse inflicted on any family or household member. Neb. Rev. Stat. § 42-364(2) (Reissue 2004); *Robb v. Robb, supra*; *Marcovitz v. Rogers, supra*.

As noted above, both parents have loving relationships with the children. However, the record reveals that Pamela was the primary caregiver. She was responsible for the children's care from the time they were infants, including bathing the children, purchasing their clothes, doing laundry, cooking the family meals, and taking the children to and from school, activities, and doctor's appointments. Further, the youngest son has Down syndrome and requires special care. Although Patrick is able and willing to care for him, Pamela works only part time outside the home and considers her "vocation in life" to be caring for her children. Thus, Pamela has more flexibility in her schedule than Patrick has when farming. The parties' 14-year-old daughter testified that she wished to live with Pamela because Pamela is the parent that usually helps her with problems and with homework and that her relationship with Patrick is not as good. While in Pamela's sole custody during the pendency of the action, the older children continued to do well in school. Regarding Patrick's contention that he should have Sunday visits on the weekends that he does not have the children, both the daughter and Pamela testified that such an arrangement would not allow the children to spend a complete weekend with Pamela. We conclude that the district court did not abuse its discretion in its custody and visitation order.

### CHILD SUPPORT

■ Patrick next challenges how the trial court calculated his child support obligation under paragraph D of the Nebraska Child Support Guidelines. Before determining a parent's child support obligation, there must be a determination regarding the monthly incomes of the custodial and noncustodial parents. See, *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004); *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003). Patrick was a self-employed farmer prior to and during the parties' marriage.

■ As a general rule, the income of a self-employed person can be determined from his or her income tax return. *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000). However, prior to September 1, 2002, paragraph D provided that if a party was self-employed, depreciation claimed on tax returns should be added back to income or loss from the business or farm to arrive at an annualized total monthly income. *Gase v. Gase, supra.*

Effective September 1, 2002, paragraph D was amended to read in relevant part:

> Depreciation calculated on the cost of ordinary and necessary assets may be allowed as a deduction from income of the business or farm to arrive at an annualized total monthly income. After an asset is shown to be ordinary and necessary, depreciation, if allowed by the trial court, shall be calculated by using the "straight-line" method, which allocates cost of an asset equally over its useful duration or life. An asset's life should be determined with reference to the Class-lives and Recovery Periods Table created pursuant to 26 CFR § 1.167(a)-11. A party claiming depreciation shall have the burden of establishing entitlement to its allowance as a deduction.
>
> . . . Any party claiming an allowance of depreciation as a deduction from income shall furnish to the court and the other party copies of a minimum of 5 years' tax returns . . . .

The amended guidelines were in effect when Pamela filed for dissolution in September 2003. In accordance with the requirement of paragraph D, Patrick produced tax returns for the years 1998 through 2003.

Patrick's tax returns showed that his taxable income during those years was determined after deducting for depreciation of

farm machinery and equipment. Patrick's tax preparer testified that the deductions were for ordinary and necessary assets in farm operations. The district court concluded that Patrick met his burden and established that he was entitled to a depreciation deduction under paragraph D. Neither party contests this portion of the court's findings.

After determining that Patrick was entitled to a depreciation deduction, the court expressed some uncertainty about the appropriate application of paragraph D and opined that allowing Patrick to reduce his income by the full amount of his depreciation deductions would "work against the best interests of [the] children." The court adopted Pamela's proposed calculations of Patrick's monthly income, which averaged the income of the years 2000 through 2003 after adding one-half of the depreciation deductions for each year back to the corresponding year's taxable income. Patrick contends that once the district court determined that he was entitled to a depreciation deduction, the court erred in using the income calculation proposed by Pamela. We agree.

■ This is our first opportunity to review a case involving the proper treatment of depreciation deductions under the September 2002 amendment to paragraph D. Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004); *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003).

Depreciation as set out in paragraph D is a matter of proving the ordinary and necessary expenses of doing business. Part of that burden is showing the court that the deduction does not represent artificial treatment of assets for the purpose of avoiding child support obligations. Once the burden is met, the appropriate procedure is for a court to use the straight-line depreciation method in calculating the parent's monthly income. Because a monthly income calculation under paragraph D is mathematical in nature, the effect of a depreciation deduction on child support is not a proper question under paragraph D.

The district court in this case determined that Patrick met his burden and established that he was entitled to a depreciation

deduction. The court was then required to calculate Patrick's income using the straight-line method of depreciation without any manipulation of the figures. Patrick's tax preparer testified that Patrick's 1996 through 2003 tax returns were prepared using the declining-balance method of depreciation, but provided the court with straight-line method depreciation figures for the same years. The district court did not compute Patrick's income using the straight-line figures provided by Patrick's tax preparer. Instead, the court adopted Pamela's calculations, which used the 2000 through 2003 declining-balance depreciation figures and which improperly manipulated Patrick's monthly income by adding back one-half of the depreciated amounts. We conclude that the district court erred in its calculation of Patrick's monthly income under paragraph D.

Pamela suggests that the court's calculation demonstrates a desire to make a warranted deviation from the guidelines, pointing to Patrick's own evidence that he is able to pay expenses that well exceed his depreciated income. Income, for the purpose of child support, is not necessarily synonymous with taxable income. *Rhoades v. Rhoades*, 258 Neb. 721, 605 N.W.2d 454 (2000). The Nebraska Child Support Guidelines offer flexibility and guidance, with the understanding that not every child support scenario will fit neatly into the calculation structure. *Brooks v. Brooks*, 261 Neb. 289, 622 N.W.2d 670 (2001).

Although what effect depreciation has on child support is not a proper question under paragraph D, once a potential child support obligation has been determined based upon the calculations under paragraph D, paragraph C permits a deviation from the guidelines "whenever the application of the guidelines in an individual case would be unjust or inappropriate." See, *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000); *Dueling v. Dueling*, 257 Neb. 862, 601 N.W.2d 516 (1999). The trial court in this case indicated that it would be contrary to the children's best interests to calculate child support based upon Patrick's depreciated monthly income. We are unable to reach this issue, however, because there is no record of what amount of child support Patrick would be required to pay based upon proper calculation of his depreciated income under paragraph D or why it would not be in the best interests

of the children to order Patrick to pay that amount. Deviations from the guidelines must take into consideration the best interests of the child, and in the event of a deviation, the trial court must state the amount of support that would have been required under the guidelines absent the deviation and include the reason for the deviation in the findings portion of the decree or order, or complete and file worksheet 5 in the court file. *Moore v. Bauer*, 11 Neb. App. 572, 657 N.W.2d 25 (2003).

Accordingly, we reverse the district court's decision ordering Patrick to pay $1,285 per month for child support and remand the matter for further proceedings in conformity with this opinion.

### SPOUSAL SUPPORT

Patrick next assigns that the trial court erred in ordering him to pay Pamela $1,000 per month in spousal support; an amount that Patrick argues exceeds his earning capacity. In her cross-appeal, Pamela argues that the district court erred in ordering that the support payments terminate after 5 years.

The Nebraska Child Support Guidelines provide at paragraph M that the guidelines "intend that spousal support be determined from income available to the parties after child support has been established." The guidelines require that Patrick's child support obligations be calculated prior to the calculation of any alimony. See *Gallner v. Hoffman*, 264 Neb. 995, 653 N.W.2d 838 (2002). Because we are remanding the matter of child support, we reverse the alimony order and remand the matter for determination after Patrick's child support obligations have been calculated. Accordingly, we need not address Pamela's cross-appeal.

### PROPERTY DIVISION

Patrick next assigns that the trial court erred in its property distribution by (1) failing to first separate out nonmarital assets that Patrick brought into the marriage or that belong to Patrick's parents in whole or part and (2) failing to show how it valued the farm machinery. Patrick contends that at the time of the marriage, he owned certain farm machinery and held cash assets in three bank accounts and two investment accounts.

Under Neb. Rev. Stat. § 42-365 (Reissue 2004), the equitable division of property is a three-step process. The first

step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004); *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004). Property which one party brings into the marriage is generally excluded from the marital estate. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

The burden of proof to show that property is nonmarital remains with the person making the claim in a dissolution proceeding. *Shearer v. Shearer*, 270 Neb. 178, 700 N.W.2d 580 (2005). The record shows that Patrick depleted the cash assets he brought into the marriage for various family expenses during the marriage. As to the farm machinery, Patrick offered evidence that his parents owned all or part of items valued at about $57,000. He also established that at the time of the dissolution proceeding, he had nonmarital personal property worth approximately $19,000, some of which he purchased before the marriage and still owned, and other items claimed as nonmarital by virtue of the traceable trade-in of property purchased before the marriage. Pamela confirmed that Patrick owned farm equipment and other property prior to the marriage, though she did not know its value.

The court's division of property awarded Pamela the marital home valued at approximately $250,000, and a car, personal property, and cash accounts valued at $14,631. She was given responsibility for $26,130 in marital debt, making her portion of the net marital estate $238,501. Under the decree, Patrick's portion of the net marital estate was $241,475.16. The court awarded Patrick marital assets valued at $533,771.46 and $292,296.30 in marital debt. Patrick was awarded all income-producing property, including farmland valued at $97,000 and farm machinery valued at $260,000.

The court did not discuss premarital property or individually list or value each piece of farm machinery in its decree. Even if the court overlooked the value of the nonmarital machinery, as Patrick suggests, the court did not abuse its discretion in distributing the marital property. Although the division of property

is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004); *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

Even adjusting the award by deducting the value of the disputed machinery, Patrick's net award would still result in his receipt of at least one-third of the marital property. Further, the court's division was fair and reasonable. Pamela was given custody of the minor children. The parties agreed it would be in the best interests of the children to be able to remain in the marital home with whichever parent was given custody. As a practical matter, the district court awarded the marital home to Pamela and the farm property, machinery, and equipment to Patrick. The marital home is the only significant property awarded to Pamela and is not an income-producing asset. Pamela earns approximately $731 per month. It would be unreasonable to require Pamela to offset any perceived difference in the property distribution by taking out a loan that she can ill afford to service. Accordingly, we find no error in the property distribution.

## ATTORNEY FEES

█ Finally, Patrick contends that the trial court erred in ordering him to pay $10,000 of Pamela's attorney fees and all fees and costs for representation of the minor children. In an action for dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

█ The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005). This action involved a 7-day court trial over a 3-month period. The custody of the four children was a primary issue, and the

court appointed an attorney to represent their interests. Neither party contests the reasonableness of the fees. The court awarded Patrick the only income-producing marital property that existed and opined that Patrick's income capacity will be substantial compared to Pamela's "for a number of years, if not for [the] duration of her lifetime." See *Gangwish v. Gangwish, supra* (ordering husband to pay wife's attorney fees because he was awarded marital property which enabled him to continue to reap substantial income stream). Even so, Patrick was ordered to pay only about one-third of Pamela's attorney fees in addition to the fees for the children's court-appointed counsel. We conclude that the district court did not abuse its discretion in ordering Patrick to pay attorney fees.

## CONCLUSION

We affirm the district court's order awarding sole custody of the minor children to Pamela. We also affirm the court's property division and award of attorney fees. We conclude that the court erred in its calculation of Patrick's monthly income for purposes of child support under paragraph D of the Nebraska Child Support Guidelines. We therefore reverse the court's determination and remand the matter for an appropriate calculation and reasoned child support order. We also remand the matter of alimony for determination following the child support determination.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., participating on briefs.