IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GURZICK V. GURZICK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AARON FREDERIC GURZICK, APPELLEE,

V.

RASCHEL RODRIGUEZ GURZICK, APPELLANT.

Filed December 13, 2016.    No. A-15-1099.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Grant A. Forsberg, of Forsberg Law, P.C., L.L.O., for appellant.

Wm. Oliver Jenkins and Benjamin M. Belmont, of Brodkey, Peebles, Belmont & Line, L.L.P., for appellee.

INBODY, RIEDMANN, and BISHOP, Judges.

INBODY, Judge.

## I. INTRODUCTION

Raschel Rodriguez Gurzick appeals from an order of the district court for Douglas County dissolving her marriage to Aaron Frederic Gurzick. On appeal, Raschel asserts the district court erred in its orders regarding child custody, Christmas holiday parenting time, child support, valuation of the marital home, and division of marital property, and in denying her motions for contempt and a new trial. Finding no abuse of discretion by the district court, we affirm.

## II. STATEMENT OF FACTS

### 1. PROCEDURAL BACKGROUND

Aaron and Raschel were married in 1996. Two children were born during the marriage; Isabella in 2004 and Maddox in 2007. The parties separated in December 2013 and Aaron filed

- 1 -

his complaint for dissolution of marriage in January 2014. Raschel filed an answer and a cross-complaint requesting sole custody of the children. In January 2014, Raschel filed a motion for temporary custody and allowances and in February, Aaron filed a similar motion for temporary sole custody and other related issues.

In April 2014, the district court entered a temporary order, wherein the parties were granted joint legal and physical custody of the children. Aaron's parenting time was based on his Omaha Police Department work schedule at that time which consisted of four days on duty and two days off duty. Specifically, Aaron's parenting time started at 4:00 p.m. on the day immediately before his first two off-duty days until the morning following the second off-duty day, totaling three overnights. The temporary order did not specify holiday parenting time. Raschel was granted exclusive possession of the marital home. Additionally, the temporary order provided that Aaron be responsible for 57 percent and Raschel be responsible for 43 percent of the children's medical costs and direct expenditures. The parties were also ordered not to disparage one another and not to disturb the peace of each other. On the same date, Aaron filed a second amended complaint requesting sole legal and joint physical custody of the children. Later in June 2014, Aaron filed a second amended complaint requesting sole legal and physical custody of the children.

On February 12, 2015, Raschel filed a motion for contempt of the April 2014 temporary order regarding parenting time over Christmas 2014, Aaron entering and removing items from the marital home, and Aaron disturbing her peace. On February 20, 2015, Aaron also filed a motion for contempt of the April 2014 temporary order for Raschel's violation of reimbursement for failing to pay him unreimbursed medical expenses and direct expenditures for the children and to pay registration for vehicles.

After multiple continuances, the matter came on for trial on February 23 and 24, April 14, and May 14, 2015, regarding the complaint for dissolution of marriage and motions for contempt.

2. PARTIES' RELATIONSHIP

At trial, testimony was heard regarding the parties' strained relationship and the influence it had on the children. Aaron testified when the parties initially separated he believed the parties could co-parent, but he realized after filing he and Raschel had difficulty in agreeing and a great deal of animosity towards each other. Both parties testified as to the antagonism between them, including at Isabella's Girl Scouts meetings and Maddox's Cub Scouts meetings. As a result, Aaron testified he used video and audio recordings when he interacted with Raschel. Raschel also testified about Aaron's consistent videotaping. Aaron further testified that for a time during the marriage, the parties communicated through his mother.

Aaron testified to specific events illustrating the hostility between the parties, including that Raschel accosted him in public at the children's sporting events on more than one occasion, which Raschel denied. Both parties testified as to events where Raschel called law enforcement on Aaron when he came to pick up the children. Aaron also testified about an event in April 2014, when he came to pick up the children, saw Raschel's boyfriend's dog at the marital residence, and claims she hit his arm, causing him to call law enforcement to file assault charges. Raschel denied hitting Aaron and testified the assault charge was dismissed. Raschel admitted that she referred to Aaron as "evil" and "a liar" in front of the children.

Based on his concern for the children in dealing with the parties' separation, Aaron testified he suggested counseling for the children, but Raschel opposed it. However, the parties were eventually able to agree on Dr. Kevin Cahill. Aaron testified he has been very active in the children's counseling sessions, but Raschel had not been participating and never asked him about future appointments. Aaron acknowledged he did not tell Raschel about certain appointments, claiming she could have found out about the appointments herself. Raschel testified she believed the children no longer needed to attend counseling. Dr. Cahill testified the children had difficulty in adjusting because of the parties' separation.

Aaron also testified that in December 2014, he bid for a change in his work schedule in order to be closer to home. The shift transition occurred near the Christmas holiday. Raschel requested that Aaron bring the children to the events taking place with her family on Christmas, but Aaron refused. Raschel did not see the children on Christmas Eve.

Moreover, Aaron testified he sent an email to Raschel's work email in order to obtain reimbursement for medical and other direct expenses for the children. Raschel denied ever receiving the email. Raschel did not reimburse Aaron for her portion of the children's expenses.

### 3. PARTIES' RELATIONSHIP WITH CHILDREN

Aaron testified as to his involvement with the children, including his participation in the children's scouting programs, sports, school, and other activities. Aaron also stated he has always been the children's primary caretaker and provided testimony about how much he cares for the children with homework and meals, takes them to various appointments, and provides an active lifestyle for the children. Testimony suggested Raschel was not nearly as involved with the children.

Raschel stated she felt like she had a good relationship with the children. Raschel also testified she signed up the children for music lessons in January 2014, but that Aaron refuses to take the children to music lessons because her brother works there.

Additionally, Raschel testified that at Christmas time, the parties would be with Aaron's family earlier in the day on Christmas Eve, and later go to Raschel's family to celebrate and attend mass. Raschel called her aunt, Maria Rodriguez, to testify about the family's traditions during the Christmas holiday. Maria testified Raschel's family would attend 5 p.m. mass on Christmas Eve, gather at Maria's home, open presents at midnight, and continue with family activities through Christmas day, into the following day or the end of the weekend.

### 4. AARON'S SALARY

At trial, Aaron testified he earned $65,000 per year as a police officer for the Omaha Police Department. Aaron also testified he has performed some moonlighting work for Archangel Security one to two times per month at $25-$30 an hour, but had not worked for the company in 2015 and did not intend to work there as often as the children became older. Aaron earned approximately $1,700 in 2013 and in 2014 earned approximately $2,100 from this part-time employment. Raschel testified she believed Aaron made $25-$35 an hour working with Archangel Security, that he worked 4 to 6 hours a night, and was gone 10 to 15 times per month, earning about $200 each time.

Moreover, Aaron testified he owned a side business doing stippling work for guns, but that the business ended in 2012. Raschel testified she believed Aaron still did business stippling guns making $150-$300 per month, that he was paid in cash, and one year he earned $6,000.

Aaron also testified his current Omaha Police Department salary was based on being a member of the bomb squad, but that he is no longer a member of the bomb squad and he would have to pay back any additional income he received based on the bomb squad designation.

Aaron's suggested child support calculation did not include any additional part-time income.

### 5. MARITAL PROPERTY

Raschel requested an award of the 1992 Kawasaki motorcycle, claiming she was the primary driver of the motorcycle. At trial, Raschel argued that when Aaron purchased the Kawasaki motorcycle in 1994, she was a cosigner of the motorcycle. Raschel also testified she sold a motorcycle she owned for $1,000 to put money down for the Kawasaki motorcycle. Aaron argued the Kawasaki motorcycle was a premarital asset because he purchased the motorcycle. Aaron testified he did not recall Raschel giving him $1,000 to help purchase the Kawasaki motorcycle.

Regarding the valuation of the marital home, Aaron called Charles Bundy, a residential real estate appraiser, to testify. Bundy testified that in May 2014, he appraised the home at $230,000 using a sales comparison approach. Bundy testified he was not aware of the need for the roof to be repaired as a result of hail damage. The insurance company valued the loss based on the damage to the roof at $14,900. Bundy was critical of Raschel's appraiser, Dan Wilder, because Wilder only used two-car garage comparisons and considered homes unlike the marital property.

Raschel called Wilder, also a real estate appraiser. Wilder testified that in July 2014, he appraised the home at $239,000 by using a comparable sales approach. Wilder was critical of Bundy, claiming he failed to use current data and used too large of a lot size. Wilder also testified he was not aware of the need for the roof to be repaired and that information would have influenced his opinion on the value.

Raschel also sought to keep the 2013 Jeep Wrangler Unlimited. Raschel testified the Kelley Bluebook value of the Jeep Wrangler was $28,035, that it was in good condition, with a broken windshield costing $500 to replace, some interior scratches and "nicks and dings," and 35,000 miles. Raschel also stated the Jeep Wrangler was an automatic, had leather and heated seats, power door locks, and a satellite stereo. Aaron provided a Kelley Blue Book valuation of $31,970 for the Jeep based on the vehicle being in excellent condition at 30,000 miles.

### 6. DISSOLUTION DECREE

Based on the inability of the parents to successfully maintain a joint custodial arrangement, the trial court determined it was in the best interests of the children for Aaron to have sole physical and legal custody of the children. Raschel was granted parenting time with the children each Wednesday from 4 p.m. until the following day at 9 a.m. and every other weekend from Friday at 4 p.m. until Monday at 9 a.m.

Aaron was awarded parenting time with the children every year on Christmas Eve day at 9 a.m. until Christmas Day at 9 a.m. Raschel was awarded parenting time with the children every year on Christmas Day at 9 a.m. until December 26 at 9 a.m.

The trial court determined to base the child support calculation on Aaron's monthly income of $5,645 and Raschel's monthly income of $3,758. Raschel was ordered to pay $873 per month in child support.

Aaron was awarded the marital home. The trial court determined the value of the marital home was $230,000, and the equity of the home was $69,553.97. Aaron was ordered to pay Raschel an equalization payment of $34,776.98.

The trial court also determined the value of the 2013 Jeep Wrangler to be $31,970. Further, the trial court determined the 1992 Kawasaki motorcycle was an asset acquired by Aaron previous to the marriage.

### 7. ORDERS REGARDING MOTIONS FOR CONTEMPT

The court dismissed Raschel's motion for contempt, ruling that Aaron's violation of his parenting time around the 2014 Christmas holiday was not a willful violation of a court order. The trial court also stated both parties exhibited "vexatious" behavior towards each other.

Additionally, the trial court granted Aaron's motion for contempt, determining Raschel failed to pay her portion of $182.91 for unreimbursed medical expenses and her portion of $835.16 for direct expenditures for the children. The trial court also determined Raschel failed to register the 2001 Chevrolet S10, 2003 Yamaha Roadster, and 2000 Suzuki GSRX750, and ordered Raschel to pay $512.77 to Aaron and $500 in attorney fees.

## III. ASSIGNMENTS OF ERROR

On appeal, Raschel's assignments of error, consolidated and restated, are that the trial court erred in: awarding Aaron sole physical and legal custody of the children and basing its decision on personal opinions, observations, and findings in its order; awarding Aaron Christmas Eve every year with the children; calculating child support; valuating the marital home for equity purposes; determining the type, value, and division of certain property and vehicles and the division of property by auction; failing to order Aaron to continue to cover Raschel on his health insurance; and denying Raschel's motions for new trial and contempt action, while granting Aaron's motion for contempt.

## IV. STANDARD OF REVIEW

An appellate court's review in an action for marriage dissolution is de novo on the record to determine whether there has been an abuse of discretion by the trial court. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, and alimony. See, *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard

and observed the witnesses, and accepted one version of the facts rather than another. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

An abuse of discretion occurs when a trial court bases its decisions upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

## V. ANALYSIS

### 1. CUSTODY AND PARENTING TIME

#### (a) Aaron's Sole Legal and Physical Custody of Children

Raschel claims the trial court showed bias and was not impartial based on the trial court judge's opinions, observations, and findings in the decree of dissolution of marriage, particularly in regard to her custody and parenting time. Raschel argues the trial court's decision to award Aaron sole physical and legal custody is not in the children's best interests, stating the trial court only focused on her behavior in its award of custody, rather than acknowledging Aaron's "reprehensible" behavior and harassment.

The best interests of children requires a parenting arrangement and plan which provides for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2014). Factors in determining the best interests of a child include, but are not limited to: the relationship of the child with each parent, the desires of the child, the general health and welfare of the child, and credible evidence of abuse. Neb. Rev. Stat. § 43-2923(6).

In addition to the "best interests" factors provided in Neb. Rev. Stat. § 43-2923, a court making a child custody determination may consider: the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between the child and parents; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag v. Spear*, *supra*.

Although Nebraska statutes and case law recognize the importance of both parents remaining active and involved in parenting to serve the best interests of the child, the statutes do not require the district court to grant equal parenting time or joint custody to the parents if such is not in the child's best interests. See Neb. Rev. Stat. § 43-2923(3) (Cum. Supp. 2014); *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009); *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009) (court did not abuse its discretion in failing to find joint custody was in best interests of children when the parties had difficulty communicating with each other).

In this case, the parties' separation and divorce caused the children stress and anxiety. The children have been actively seeing a counselor, despite Raschel's resistance. The trial court stated, based on the Dr. Cahill's testimony, the children should be in professional counseling because

"they were traumatized by the behavior of both parents, privately and publicly, since they were allowed to share joint temporary custody[.]" The trial court listed the offenses of both parties towards one another and how it notably influenced the children. Such instances included: videotaping the other parent, protection orders, 9-1-1 calls on the other parent, public and private outbursts by Raschel towards Aaron, assaults on Aaron by Raschel, and evidence that Raschel told the children Aaron was "evil and a liar and cheater."

In its custodial determination, the trial court noted the parties' love for their children. Both parents made efforts to assist the children through the separation process, by integrating them in various social and extracurricular activities and groups. The children are active, healthy, and adjusting to the new arrangement. Although the temporary arrangement had provided for joint custody of the children, the evidence suggested Aaron is more intimately involved in the children's lives and understands the expectations as a primary caretaker of the children. Aaron is actively involved in attending counseling with the children, while Raschel appears to be opposed to it. Further, the evidence suggested Aaron is especially active in the children's extracurricular activities and school, but Raschel is not nearly as active.

Despite the parties' love for, and involvement with, the children, the trial court reiterated an emotional toll has been taken on the children based on the parties' "animosity for one another and inability to insulate their children from it[.]" There was also considerable testimony from both Aaron and Raschel that they had a difficult time communicating with one another, and communication is an essential requirement for joint custody to be successful. The trial court also reminded the parties the custody and parenting time decision was ultimately placed in its hands "rather than the parents agreeing on an arrangement in the best interest[s] of the children (not the parents), which the [c]ourt would have been pleased to approve." Upon our de novo review, we find the trial court did not abuse its discretion in its decision to award sole legal and physical custody to Aaron.

(b) Aaron's Award of Christmas Eve Parenting Time

Raschel also argues Aaron was inappropriately awarded Christmas Eve parenting time each year despite testimony about her family's Christmas Eve traditions and no discussion regarding Aaron's Christmas traditions.

The trial court heard testimony that Aaron's family traditions took place mainly on Christmas Eve. The trial court also heard testimony that Raschel's family would attend 5 p.m. mass on Christmas Eve, gather at Raschel's aunt's home, open presents at midnight, and continue with family activities through Christmas day and into the following day or until the end of the weekend. The trial's court determination appears to be based upon Aaron's family festivities taking place wholly on Christmas Eve, while Raschel's family events took place throughout Christmas Day and remaining days thereafter. This holiday schedule does not appear to go against the best interests of the children, and we cannot find it was an abuse of discretion for the court to provide for the Christmas Eve and Christmas Day parenting time as scheduled.

## 2. CHILD SUPPORT

Raschel argues the trial court "blindly accepted" Aaron's child support calculation and accepted Aaron's annual income as $57,600 without considering his off-duty work. Raschel also claims the trial court failed to use Worksheet 3 or 5 of the Nebraska Child Support Guidelines to calculate child support because she has 44-45 percent of the time with the children and should be allowed the joint custody calculation or a significant deviation.

The best interests of the child is the paramount concern in child support cases. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). Generally, payments for child support should be in accordance with the Nebraska Child Support Guidelines adopted by the Nebraska Supreme Court, as they are presumed to be in the best interests of the child. *Id*. See also Neb. Rev. Stat. § 42-364.16 (Reissue 2008); *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In determining the amount of a child support award, a trial court must consider the status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support for the children. *Anderson v. Anderson*, *supra*. A court must consider a party's total monthly income derived from all sources in calculating child support. See Neb. Ct. R. § 4-204 (Rev. 2008). See also *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007).

A court *may* deviate from the guidelines if it finds their application in a given case would be unjust or inappropriate. *Anderson v. Anderson, supra*; Neb. Ct. R. § 4-203(E) (Rev. 2011) (emphasis added). A court must specifically find a deviation is warranted based on the evidence and state the reason for the deviation in the decree, or complete worksheet 5 showing the deviations and include it in the court file. *Anderson v. Anderson, supra*; Neb. Ct. R. § 4-203. "Deviations must take into consideration the best interests of the child." Neb. Ct. R. § 4-203.

In this instance, there is no indication the trial court blindly accepted Aaron's income at $57,600. The child support worksheet indicates Aaron's total monthly income is $5,645, or an annual income of $67,740. Aaron's testimony provided the child support calculation did not include any of his part-time job income because he had not performed any outside work in 2015. Moreover, Aaron's testimony at trial provided he was still receiving an income for being on the bomb squad with the Omaha Police Department, that he had been removed from the bomb squad, and that he would have to reimburse the Omaha Police Department for bomb squad income.

The trial court also determined a deviation from the child support amount was not in the best interests of the children, and as a result, did not see a need to complete worksheet 5. Further, under Neb. Ct. R. § 4-212 (Rev. 2011), there is a rebuttable presumption that child support shall be calculated using worksheet 3 "[w]hen a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year[.]" Here, the court did not order joint physical custody. Rather, the trial court granted Aaron sole legal and physical custody of the children and Raschel was awarded approximately 130 custodial nights per year, or about 35 percent. See *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001) (although 35 percent considered liberal parenting schedule, trial court did not err in calculating child support using sole custody worksheet). As such, the trial court did not abuse its discretion in its award of child support.

### 3. MARITAL PROPERTY VALUATION AND DIVISION

#### (a) 1992 Kawasaki Motorcycle

Raschel asserts Aaron failed to produce any evidence the 1992 Kawasaki motorcycle was purchased by him without her involvement. Raschel claims she sold another motorcycle to provide a down payment for the Kawasaki, that she was a cosigner on the Kawasaki loan, that she was the primary rider of the Kawasaki, and that marital funds paid for the loan payments, maintenance, and licensing of the Kawasaki, meaning it was a co-mingled asset that should have been labeled as marital when divided.

In a marriage dissolution action, "the purpose of a property division is to distribute the marital assets equitably between the parties." Neb. Rev. Stat. § 42-365 (Reissue 2008); *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Under Neb. Rev. Stat. § 42-365, the equitable division of property is a three-step process: The first step is to classify the parties' property as marital or non-marital, the second step is to value the marital assets and marital liabilities of the parties, and the third step is to calculate and divide the net marital estate between the parties in accordance with statutory principles. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015). Neb. Rev. Stat. § 42-365 authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012).

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Brozek v. Brozek*, *supra*. The marital estate also includes property accumulated and acquired during the marriage through the joint efforts of the parties. *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002). However, property which one brings into the marriage is generally excluded from the marital estate. *Brozek v. Brozek*, *supra.* The burden of proof to show property is non-marital remains with the person making the claim in a dissolution proceeding. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

Raschel recognizes the general principle that premarital assets should be awarded to the individual who owned the asset prior to marriage and agrees Aaron purchased the Kawasaki motorcycle prior to the parties' marriage date. Despite this, Raschel claims the trial court should have classified the Kawasaki as marital property based on the exception set out in *Van Newkirk v. Van Newkirk,* 212 Neb. 730, 325 N.W.2d 832 (1982).

At trial, the court determined the Kawasaki motorcycle was acquired prior to marriage. A certificate of title indicates Aaron was the owner of the Kawasaki motorcycle. Also, a Nebraska DMV vehicle summary listed Aaron as the owner of the Kawasaki motorcycle. Raschel is not listed on the certificate of title or the DMV vehicle summary. An Agreement to Provide Accidental Physical Damage Insurance was also provided as an exhibit, listing Aaron as the borrower and Raschel as the co-borrower.

The certificate of title and DMV vehicle summary listing only Aaron as the owner are sufficient to provide the Kawasaki motorcycle as a nonmarital asset. Further, Raschel did not provide adequate proof that her contributions to the Kawasaki motorcycle were sufficient to convert it to a marital asset. Accordingly, the trial court did not abuse its discretion in determining the Kawasaki motorcycle was Aaron's premarital asset and excluding it from the marital estate.

(b) Division of Marital Property and Auction

Raschel also argues the trial court inequitably divided the marital property and erred in ordering a private auction to divide the remainder of the marital property, as Aaron removed assets prior to the first decree and he was granted possession of the marital home before she was able to remove personal property. Raschel further claims the trial court failed to provide meaningful division of the marital property and failed to take into consideration the values of certain items. Namely, Raschel asserts the trial court granted Aaron possession of certain items until an auction could be held without any requirements or protections.

The dissolution decree provided:

the parties shall divide their household goods, furniture, furnishings and personal effects equitably. In the event they are unable or unwilling to do so, the parties shall engage in a private auction amongst themselves to resolve the issue. In the event there remains property that neither party desires, those items shall be sold, with the proceeds to be divided equally between the parties.

In this instance, the trial court provided for an equitable distribution of the remaining marital possessions. As shown throughout the proceedings, the parties continued to disagree as to the valuation of marital assets. The parties' individual testimony suggested a difference in opinion based on the valuation of various marital household and personal items. Under the circumstances, the trial court provided an appropriate, fair, and reasonable solution in the division of the remaining property. The trial court did not abuse its discretion in the parties being required to divide the household and personal effects equitably and to engage in a private auction amongst themselves to resolve the issue if unwilling and unable to agree.

(c) Valuation of Marital Property

Raschel claims the trial court erred in its valuation of the marital home for equity purposes. In response, Aaron argues Raschel voluntary accepted the benefits of the property division when she acknowledged receipt of the $34,776.98 marital equalization payment for the marital estate.

Triers of fact are not required to take opinions of experts as binding upon them. *McWhirt v. Heavey,* 250 Neb. 536, 550 N.W.2d 327 (1996); *Anania v. Anania,* 6 Neb. App. 572, 576 N.W.2d 830 (1998). The determination of the weight that should be given expert testimony is uniquely the province of the fact finder. *Pohlmann v. Pohlmann,* 20 Neb. App. 290, 824 N.W.2d 63 (2012); *Anania v. Anania, supra*.

Upon our review of the record, we cannot say the district court erred in valuing the marital home at the amount provided by Aaron's expert, especially since the district court was in the better position to determine the credibility of the witnesses. Thus, we affirm the decision of the district court concerning the value of the marital property.

(d) Value Determination of 2013 Jeep Wrangler

Raschel claims the trial court erred in its value determination of the 2013 Jeep Wrangler because the vehicle had close to 60,000 miles on it and she was the only person who possessed the vehicle and had knowledge about it.

At trial, Raschel testified she believed the value of the 2013 Jeep Wrangler to be $28,035 based on the Kelley Blue Book valuation as it is in good condition with a broken windshield costing $500 to replace, has some scratches in the interior and some "nicks and dings," and 35,000 miles. However, the Jeep Wrangler was also an automatic, had leather and heated seats, power door locks, and a satellite stereo. In his testimony, Aaron provided a Kelley Blue Book valuation of $31,970 for the Jeep based on the vehicle being in excellent condition at 30,000 miles. Raschel did not submit any evidence to support her valuation. We find no abuse of discretion in valuing the Jeep Wrangler at $31,970.

### (e) Raschel's Award of 2001 Chevrolet S10

Raschel also claims she was awarded the 2001 Chevrolet S10 despite not requesting the vehicle or contesting value.

As noted above, the Nebraska Supreme Court has repeatedly stated the ultimate test for determining an appropriate division of marital property is one of fairness and reasonableness. The division of property made in a marriage dissolution proceeding will not be disturbed on appeal unless it is patently unfair. *Gibson-Voss v. Voss,* 4 Neb. App. 236, 541 N.W.2d 74 (1995). Upon review, it is apparent the trial court properly considered value and indebtedness of all assets in its decision. The Chevrolet S10 was one of those assets. The trial court did not distribute the personal property based on mere possession. From our de novo review, the district court did not abuse its discretion in the award of the 2001 Chevrolet S10 to Raschel.

### 4. HEALTH INSURANCE

Raschel argues the trial court erred in failing to order Aaron to continue to cover her on his health insurance for 6 months following entry of the decree.

The trial court specifically found that "[f]or purposes of continuation of health insurance coverage, a Decree dissolving marriage becomes final and operative six (6) months after the Decree is entered." This language is verbatim statutory language from Neb. Rev. Stat. § 42-372.01(3) and appears to be used as boilerplate language in the divorce decree.

In reviewing the trial court's previous determinations, the April 24, 2014, temporary order directed Aaron to maintain health insurance for Raschel and the children. Although the divorce decree did indicate the requirement for Aaron to maintain health insurance coverage for the children, the trial court did not specifically order Aaron to provide Raschel with health insurance coverage, including during the 6 months following the divorce decree's entry.

The trial court was not obligated to order Aaron to continue Raschel's health insurance during the 6-month period following entry of the divorce decree. Therefore, we find the trial court did not err in failing to order Aaron to continue to cover Raschel on his health insurance for 6 months following entry of the decree and that Raschel's assignment of error lacks merit.

### 5. MOTIONS FOR CONTEMPT AND NEW TRIAL

### (a) Denial of Raschel's Motion for Contempt

Raschel claims the trial court erred in denying her motion for contempt of the April 2014 temporary order covering parenting time, possession of the marital home, and violation of the

mutual restraining order. The court dismissed the motion, stating Aaron's violation of his parenting time around the Christmas holiday in 2014 was not a willful violation of a court order, that Raschel's understanding of vacation blocks was misplaced, and that both parties exhibited "vexatious" behavior towards each other.

The trial court heard testimony from both parties regarding Christmas 2014, the temporary order, vacation blocks, and the parties' behaviors towards one another. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses, and accepted one version of the facts rather than another. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Upon our de novo review, we cannot find an abuse of discretion in the trial court's determination to dismiss her motion for contempt regarding alleged violations of the April 2014 temporary order.

### (b) Granting of Aaron's Motion for Contempt

Raschel also claims the trial court erred in granting Aaron's motion for contempt for failing to pay Aaron unreimbursed medical expenses and direct expenditures for the children and to pay registration for vehicles. The trial court determined Raschel failed to pay her portion of $182.91 for unreimbursed medical expenses despite an email being sent to her place of employment and failing to provide evidence that she sent payment for those bills despite her testimony that she paid. The trial court also determined Raschel failed to pay her portion of $835.16 for expenditures for the children, despite claiming she did not pay for those expenses because she also incurred expenses for the children. Finally, the trial court also determined Raschel failed to register the 2001 Chevrolet S10, 2003 Yamaha Roadster, and 2000 Suzuki GSRX750, despite being ordered to pay for the "car insurance, taxes and license for all vehicles, her car payment and the motorcycle payment." Aaron provided proof he paid $75 to register the 2003 Yamaha Roadster and Raschel offered no evidence to the contrary. As such, the trial court ordered Raschel to pay $512.77 to Aaron and $500 in attorney fees.

Again, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses, and accepted one version of the facts rather than another. *Freeman v. Groskopf*, *supra*. Aaron provided evidence that Raschel did not reimburse certain expenses despite Raschel receiving notice to pay them and Raschel did not provide any evidence to the contrary. Upon our de novo review, we cannot find an abuse of discretion in the trial court's determination to grant Aaron's motion for contempt for reimbursement of certain expenses.

### (c) Raschel's Motion for New Trial

Raschel finally argues the trial court erred in denying her motion for a new trial. After the district court filed the decree of dissolution, Raschel timely filed a motion for new trial in which she alleged the trial court erred for the similar reasons she argues in her appellate brief to this court. The trial court subsequently overruled Raschel's motion, and she now alleges such denial constituted an abuse of discretion. A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). In light of our analysis of Raschel's other

assignments of error, we conclude the district court did not abuse its discretion in overruling Raschel's motion for new trial. We find Raschel's contention to be without merit.

## VI. CONCLUSION

Upon our de novo review of the record, we find the district court did not abuse its discretion in any of its orders regarding child custody, Christmas parenting time, child support, and the division and valuation of marital property; in denying Raschel's motions for new trial and contempt; and in granting Aaron's motion for contempt. Therefore, we affirm the district court's order dissolving Aaron and Raschel's marriage in its entirety.

AFFIRMED.