AURORA RAMIREZ MASKA, APPELLANT, V.
JOEL DEAN MASKA, APPELLEE.
742 N.W.2d 492

Filed December 7, 2007.   No. S-07-187.

Kay E. Tracy, of Legal Aid of Nebraska, for appellant.

Kent A. Schroeder, of Ross, Schroeder & George, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Buffalo County District Court entered a decree dissolving the marriage of Joel Dean Maska and Aurora Ramirez

Maska. The court awarded custody of the couple's two minor children to Joel. The order provided that Joel would have custody of the children during the school year and that Aurora would have custody during the summer. The parties were previously involved in a legal separation, and at the time of the separation, their property was divided and their debts were allocated. Neither party appeals the division of property or allocation of debt. Aurora appeals the order involving custody of the minor children.

## SCOPE OF REVIEW

■ Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

## FACTS

The parties were married on July 19, 2000, in Bogotá, Colombia, South America. Two children were born of the marriage, the first on February 26, 2001, and the second on June 20, 2002. During the marriage, difficulties arose between the parties and efforts to reconcile their differences were unsuccessful. Because of the parties' prior legal separation, the primary issue presented in this case was the custody and support of the minor children.

During the pendency of the divorce proceedings, a juvenile petition was filed in the Buffalo County Court and allegations were made by both parties concerning physical and emotional abuse of the children. The children were placed in the legal custody of the Department of Health and Human Services (DHHS). On May 25, 2005, the juvenile court found that the children's best interests required that they continue in the legal custody of DHHS. The juvenile court found that Aurora was depressed for a variety of reasons, including separation from members of her family left in Colombia, her inability to fluently speak English, and the fact that she had been raised in a very poor environment in Colombia and was likely to view herself as unable to control her future. She was described by a psychologist as being "volatile."

Joel was described by the juvenile court as being outgoing, confident, and balanced but also suffering from situational depression. At that time, the juvenile court found that neither parent was in a position to provide for the children if placed in their individual custody.

On December 20, 2005, the juvenile court entered an order dismissing the proceedings and terminating DHHS' custody of the children. A DHHS representative testified in the district court that the dismissal was based upon a finding by DHHS that the allegations of abuse were unfounded.

At the time of the divorce proceedings and during the time that the juvenile court had jurisdiction of the children, both parents participated in extensive counseling services and completed parenting classes. The district court found that the children had some adjustment problems but that, generally, the children appeared to be relatively well-adjusted and raised no parenting concerns as to either parent.

At trial, Dr. John Meidlinger, a licensed clinical psychologist, testified and opined as to the best interests of the children concerning the issues of custody and visitation. He had been involved with the family on an evaluation basis since the juvenile court proceedings. Meidlinger conducted a custody evaluation of the parties and testified that neither parent was unfit and that the children were remarkably well adjusted given the volatility of the parental relationship. He stated that both parties had tried to cut the other off from the children and that both had anger and resentment issues concerning the other parent. He testified that the children had important relationships with each other but that the current parenting time schedule was not in the children's best interests because it required movement of the children from one home to another on a frequent basis.

Meidlinger opined that Joel was the warmer and more supportive parent and that Aurora exhibited dependency characteristics tending to represent herself as helpless and in need of various agency and private programs. Meidlinger recommended that primary physical custody of the children be given to Joel during the school year and to Aurora during the summer months. He also stated that the court should retain legal custody of the children for a 1-year period to ensure that the parties

could properly adjust, parent, and discontinue the harmful parental relationship.

The district court found that the parties had had a violent and abusive relationship toward each other for at least 6 years and had exhibited traits of physical violence toward each other. After 18 months of intervention by DHHS, the parties' relationship had improved but not to the point where they could interact civilly or jointly parent the children.

The district court concluded that the custody of the minor children should be placed with Joel, subject to Aurora's parenting time as set forth in the decree. In the decree, the court stated that Joel would be the primary custodial parent during the school year and that Aurora would be the primary custodial parent during the summer months. Specific times and dates were set forth in the decree.

The order provided that each party was entitled to receive educational information concerning the progress the children were making in school and other daycare activities. Both parties were entitled to communicate with the school and other daycare personnel concerning the progress of the children and would be entitled to receive the respective educational programs and agency schedules of the children's events. Both parties were also allowed to receive information from all health care providers concerning the health status of the children, and each parent was allowed to make medical decisions on an emergency basis for the benefit of the children when the children were in his or her physical custody.

Based upon the parenting time schedule set forth in the decree and using the joint custody formula, the district court ordered Joel to pay child support of $78 per month. The children were receiving Social Security benefits of $555 per child per month, and these benefits were appropriately proportioned between the parties to ensure the care and well-being of the children while they were in each parent's physical custody. The court found that Aurora should receive 46 percent and Joel 54 percent of the Social Security benefits being paid for the benefit of the children. Joel was ordered to pay 65 percent of the daycare expenses necessary for employment and the same percentage of any medical expenses not reimbursed by a third party.

## ASSIGNMENTS OF ERROR

Aurora claims the district court erred by failing to make specific findings of parental fitness and best interests of the children; erred by not recognizing the evidence showed that Joel was unable or unwilling to fulfill his primary obligation—to promote and facilitate a relationship between the children and Aurora, the noncustodial parent; and erred by using Aurora's national origin and language as a factor against her when evaluating the best interests of the children.

## ANALYSIS

Aurora claims the district court failed to make specific findings regarding the fitness of the parents and the best interests of the children. We conclude there is no merit to this argument. Although the court did not specifically state what was in the children's best interests with regard to custody, such was implied in its custody order. The court recounted that Meidlinger had given his opinion as to the children's best interests concerning custody and visitation and had recommended that primary physical custody be given to Joel during the school year. Many of the facts the court described went directly to the issue of fitness. Meidlinger testified that neither parent was unfit. By adopting Meidlinger's findings concerning fitness and best interests, the court made its determination that both parties were fit for custody.

The next issue was which parent should have physical custody for a majority of the time. When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id.* In determining a child's best interests under Neb. Rev. Stat. § 42-364 (Cum. Supp. 2006), courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an

existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. See *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004).

■ Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Gress v. Gress, supra.* A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

In the case at bar, Aurora argues the evidence showed that Joel was either unfit or did not promote the children's best interests because he was either unable or unwilling to fulfill what she deemed the primary obligation of all custodial parents, that is, to promote and facilitate a relationship with the noncustodial parent. We disagree. The record does not establish that either parent was unfit, although it was clear that the parties had had a "violent and abusive relationship towards each other for at least 6 years."

Aurora has not stated any proposition of law specifically requiring that in order to be granted custody, the custodial parent must promote and facilitate a relationship with the noncustodial parent. She relies on two cases from the Nebraska Court of Appeals: *Smith v. Smith*, 9 Neb. App. 975, 623 N.W.2d 705 (2001), and *Kay v. Ludwig*, 12 Neb. App. 868, 686 N.W.2d 619 (2004). It is true that these cases mention the promotion and facilitation of a relationship with the noncustodial parent, but they do not state that this was a completely determinative factor in the decision of whom to award custody. While the promotion and facilitation of a relationship with the noncustodial parent is a factor that may be considered, it is not the only factor nor is it a completely determinative factor.

In its findings, the district court noted that both parties had tried to cut the other off from the children and that both parties had anger and resentment issues concerning the other parent.

However, the court specifically noted that Meidlinger, the child psychologist who had been involved with the parties during the juvenile court proceedings and during the dissolution, testified that neither parent was unfit. There was no evidence that described Joel as unfit, and there was evidence in the record that Joel was and had been the children's primary caregiver. Joel was described as a warmer and more supportive parent, while Aurora tended to represent herself as helpless. Meidlinger reported that Joel would be the better parent to have primary physical custody during the school year and that Aurora needed to demonstrate the ability to support a relationship between the children and Joel.

There is evidence in the record that supports the district court's determination that Joel is a fit parent and promotes the best interests of the children. We therefore conclude there is no merit to this argument.

Aurora's final argument is that the district court abused its discretion by using her national origin and language as a factor against her when evaluating the best interests of the children. Her argument has no merit. The court's decree does not state that it used Aurora's national origin or language as a factor. Meidlinger recommended to the court that the primary physical custody of the children be given to Joel during the school year and to Aurora during the summer months. That is the recommendation the court adopted, and we find no abuse of discretion in the court's decision.

## CONCLUSION

For the reasons set forth above, we conclude that the district court did not abuse its discretion in the award of custody that was entered. We therefore affirm the judgment of the district court.

AFFIRMED.