IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

VANLANINGHAM V. VANLANINGHAM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TIMOTHY J. VANLANINGHAM, APPELLEE,
V.
TIFFANY M. VANLANINGHAM, APPELLANT.

Filed April 2, 2013.    No. A-12-521.

Appeal from the District Court for Johnson County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Leslie A. Christensen, of Family & Juvenile Law Omaha, Christensen & Madara-Campbell, P.C., L.L.O., for appellant.

Angelo M. Ligouri, of Ligouri Law Office, for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Tiffany M. Vanlaningham appeals from a decree of dissolution in the district court for Johnson County which ended her marriage to Timothy J. Vanlaningham and awarded Timothy physical custody of the parties' minor child, subject to her reasonable rights of parenting time. Based on the reasons below, we affirm.

### BACKGROUND

The parties were married in June 2009. On September 16, 2011, Timothy filed a complaint for dissolution of marriage, seeking custody of the parties' minor child, born in 2007. Tiffany filed an answer and cross-complaint, also seeking dissolution of marriage and custody of the child. On November 9, 2011, the court entered a temporary order, awarding the parties temporary joint legal custody and joint physical custody on a week-to-week rotation.

- 1 -

On April 30, 2012, trial was held on Timothy's complaint for dissolution of marriage and Tiffany's cross-complaint. The evidence showed that in May 2010, Tiffany began having an extramarital affair with a man named "Tyler." Timothy is in the Army National Guard and was deployed to Afghanistan from July 29, 2010, to July 26, 2011. Timothy found out about the affair shortly before he was deployed. When he returned, Tiffany and Tyler were living together and Timothy moved in with his parents.

Timothy testified that Tyler moved in with Tiffany and the parties' child the day he left for deployment. Tiffany testified that Tyler did not move in until a later date. Timothy testified that Tiffany also let Tyler's brother and possibly Tiffany's brother live with her for a while as well. Tiffany denied that either Tyler's brother or her own brother ever lived with her, but that both of them would stay at her house from time to time.

Tiffany admitted that Tyler has a criminal history that she was unaware of when he moved in. She testified that she found out about his criminal history when Tyler was pulled over by a police officer while driving and was cited for driving while his license was suspended. Tiffany testified that Tyler has been charged with multiple misdemeanors, but has never been in "big trouble."

In January 2012, Tiffany moved from Dunbar, Nebraska, where the parties lived before Timothy's deployment and where she continued to live after he returned, to Deshler, Nebraska, which is about 2 hours away from Dunbar. When she moved, Tiffany left her job in Dunbar, where she was making $12.30 per hour, and took a job in Deshler, where she was making $10.25 per hour. She claims she moved to be closer to family--her brother and sister both live in Deshler.

At the time of trial, Tiffany was pregnant with Tyler's child. Tiffany testified that although she and Tyler had been dating for 2 years, she had no plans to marry Tyler, stating that she "want[s] to take things slow and figure stuff out and not rush into anything this time."

Much of the evidence presented by Tiffany related to an incident in July 2010 in which Timothy harmed himself by making cuts on his arms. The evidence of this incident will be set forth in more detail in the analysis.

In regard to the parties' care of their child, Tiffany testified that when she and Timothy were together, she was the child's primary caregiver. However, she also testified that Timothy would feed the child, change her diaper, play games with her, and read to her. The parties' child was solely in Tiffany's care during the year that Timothy was in Afghanistan. The evidence also showed that both Tiffany and Timothy take good care of the child and that the child has a strong bond and loving relationship with each of them.

On May 16, 2012, the trial court entered a decree of dissolution ending the parties' marriage and awarding the parties joint legal custody of their child and awarding Timothy physical custody, subject to Tiffany's specific parenting time.

ASSIGNMENT OF ERROR

Tiffany assigns, restated, that the trial court erred in awarding Timothy physical custody of their child.

STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Mann v. Rich*, 18 Neb. App. 849, 794 N.W.2d 183 (2011).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Colling v. Colling*, 20 Neb. App. 98, 818 N.W.2d 637 (2012).

ANALYSIS

When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, child custody is determined by parental fitness and the child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id.* In determining a child's best interests under Neb. Rev. Stat. § 42-364 (Cum. Supp. 2012), courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. *Maska v. Maska, supra*.

Tiffany assigns that the trial court erred in awarding Timothy physical custody of their child. The court found both parties to be fit, and neither party contests that finding. The issue we must address on appeal, therefore, is whether awarding Timothy physical custody of the child is in her best interests.

Tiffany makes two arguments as to why the court erred in awarding Timothy physical custody. She first argues that Timothy should not be awarded physical custody because there was substantial evidence that Timothy has mental health problems manifested by self-harm and suicidal threats.

The evidence reflects a one-time incident in July 2010 in which Timothy harmed himself by cutting his arms. The cutting incident occurred just after Timothy had learned that Tiffany was having an affair and shortly before he was being deployed to Afghanistan for a year. The parties' child was at home when Timothy harmed himself, but she did not see it happen and was never put in any danger by his actions.

Timothy saw a military psychiatrist after the incident, and although she recommended that Timothy not go to Afghanistan, she did not restrict him from going. He went to Afghanistan and while deployed for a year, he served his country and dealt with his marriage falling apart, with no issues of harming himself. Tiffany testified that Timothy told her he was going to kill himself while he was in Afghanistan, but there was no evidence of any attempts to harm or kill himself. Further, Timothy was never determined to be unfit for duty during that year. Prior to his

deployment and after his return, he has worked as a guard at a correctional facility, and there was no evidence that his mental health has affected his fitness for the job.

There was no evidence that Timothy harmed himself at any time other than the July 2010 incident. He has never been diagnosed with a mental condition, and there was no evidence that he is under any psychiatric care. We are not persuaded by Tiffany's argument that awarding Timothy primary custody is not in the best interests of their child because of Timothy's mental health.

Tiffany next argues that the trial court erred in awarding Timothy physical custody of their child, because in making a best interests determination, it took into consideration Tiffany's extramarital affair, her cohabitation, and her out-of-wedlock pregnancies. She argues that these behaviors should not have been considered because they did not adversely affect or endanger the child in any way.

When making its ruling from the bench, the trial judge discussed that Tiffany had an affair with Tyler and then allowed him to live with her and the parties' child shortly after Timothy was deployed and without knowing much about Tyler. The judge also mentioned that Tiffany was pregnant at the time of trial with Tyler's child, but had no plans to marry him after being with him for 2 years. The judge further noted that under Nebraska law years ago, such behavior would have resulted in the court's finding Tiffany unfit as a parent. The court went on to state that this is no longer the state of the law, but such behavior is still a factor that can be considered, but does not have as much weight as it used to.

As previously set forth above, there are many factors the trial court can consider in determining a child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). These include the moral fitness of the child's parents, including the parents' sexual conduct, and the attitude and stability of each parent's character. Tiffany's behaviors and/or decisions mentioned by the court in considering best interests fall under these particular factors and were appropriate for the court to consider. The court properly noted that it could not rely solely on Tiffany's behavior in determining best interests, but that her behavior could be taken into consideration. We conclude that the trial court did not err in taking these matters into account when determining the best interests of the parties' child.

CONCLUSION

For the reasons stated above, we conclude that the trial court did not err in awarding Timothy physical custody of the parties' child, subject to Tiffany's reasonable rights of parenting time. Accordingly, the decree of dissolution entered by the trial court is affirmed.

AFFIRMED.