IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SCHURMAN V. WILKINS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ASHLEY SCHURMAN, APPELLEE,

V.

MATTHEW WILKINS, APPELLANT.

Filed January 23, 2018.    No. A-17-018.

Appeal from the District Court for Cedar County: PAUL J. VAUGHN, Judge. Affirmed in part, and in part reversed and remanded with directions.

Matthew S. McKeever, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellant.

Wanda Howey-Fox, of Harmelink, Fox & Ravnsborg, for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Matthew Wilkins appeals from an order entered by the district court for Cedar County which established paternity and determined custody, parenting time, and child support for the parties' minor child. Matthew argues the district court abused its discretion in determining numerous aspects relating to custody, parenting time, and child support, as well as overruling his motion to dismiss for lack of jurisdiction and venue. For the reasons set forth below, we affirm the district court's order in all respects except its provision regarding telephonic parenting time and payments of work-related childcare costs.

- 1 -

BACKGROUND

Matthew and Ashley Schurman have one child together, Ruby, born in 2013. Ashley filed a complaint to determine paternity and establish custody in the district court for Cedar County on January 2, 2015. Matthew filed a motion to dismiss the complaint on February 3, arguing that the district court for Cedar County lacked jurisdiction and venue because he had filed a complaint in the district court for Sarpy County on December 1, 2014. The district court for Cedar County overruled Matthew's motion to dismiss on February 10, 2015. The court found that Ashley and Ruby were domiciled in Cedar County at the time of the filing of the complaint and that the district court for Sarpy County had dismissed Matthew's complaint.

The case proceeded to trial on May 20, 2016. At the time of trial, Ashley was 32 years old. She had graduated from high school and earned some college credit, but did not have a college degree. Ashley was employed as a licensed physical trainer and as manager of a fitness center. The position was full time, but only required her to work 32 to 35 hours per week. She was diagnosed at a young age with obsessive compulsive disorder, but currently manages her condition with medication. Ashley testified that she has learned to live with the disorder and does not believe it hinders her ability to parent Ruby.

The parties met in 2012 and began living together in February 2013. They lived together in Sarpy County until Ruby's birth in June 2013, when Ashley stayed with her parents in Cedar County for approximately 8 months. The parties resumed cohabitating in Sarpy County until November 2014, when Ashley and Ruby moved back to Cedar County to live with Ashley's parents. Ashley and Ruby have remained in Cedar County. More recently, Matthew moved to the Crofton area to be closer to his daughter.

Ashley testified that she moved herself and Ruby to Cedar County because of the unsafe living conditions in Sarpy County. Ashley was concerned about the number of guns in the home, as well as Matthew's penchant for leaving guns unattended in the home. Additionally, Matthew's brother lived in the home and Ashley believed his behavior was not appropriate around a young child.

Ashley has been the primary caregiver for the child since her birth. At the time of trial, Matthew worked for a railroad. His schedule required that in a 2-week period, he would work 8 straight days followed by 6 days off. His work typically involved extensive travel. At the time of trial his work location was in Texas. Ashley testified that she keeps Ruby on a routine in order to instill morals and discipline. She believes that when Ruby returns from Matthew's parenting time, Ruby is tired to the point of exhaustion. Ashley testified that it takes a couple of days to return Ruby to her normal schedule after Matthew's parenting time.

Ashley called numerous witnesses. Most of her witnesses were members of her family. Ashley's father and brother testified about an occasion where Ashley had found a gun that Matt had lost in the backseat of a vehicle. Ashley's family testified that before Matthew moved to the Crofton area, he would spend most of his time in the area hunting instead of interacting with Ruby. With respect to Ashley, her family testified that she was a loving and caring mother.

At the time of trial, Matthew was 35 years old. He served 12 years in the Army National Guard and had been deployed a number of times. Matthew had some college education and had been employed as a journeyman for a railroad company for 9 years. Matthew testified that he

owned a number of guns which he stored in a locked gun safe. Matthew also has a concealed carry permit. Matthew testified that he has only hunted a few times a year since Ruby was born.

Matthew also had numerous family members testify at trial. Matthew's brothers and parents testified that Matthew was a loving parent. His neighbors testified that he interacted well with Ruby and they engaged in age-appropriate activities.

Matthew testified that if he were granted primary physical custody, he would switch to a job within the railroad to work a more traditional Monday through Friday schedule. He stated that as a member of the union, and given his seniority, he could easily change to a more traditional schedule. However, at the time of trial and entry of the district court's decree, Matthew had not changed positions.

After the conclusion of trial, the district court entered a decree awarding sole legal and physical custody to Ashley. Matthew has parenting time every other Wednesday from 9 a.m. until the following Sunday at 5:30 p.m. during his time off from work. Matthew was ordered to pay child support. The parties were ordered to divide the costs for childcare and healthcare with Matthew providing health insurance coverage for Ruby.

## ASSIGNMENTS OF ERROR

Restated and consolidated, Matthew argues the district court erred in (1) overruling his motion to dismiss based on jurisdiction and venue, (2) awarding physical and legal custody to Ashley, (3) failing to apportion childcare costs equally, (4) failing to accommodate Matthew's work schedule for holiday parenting time, (5) failing to apportion transportation for parenting time equally between the parties, (6) failing to provide him a summer abatement for child support, (7) only providing 1 day of telephone contact when Matthew did not have his parenting time, (8) failing to provide in the parenting plan provisions for the parties to notify each other of Ruby's healthcare appointments, and (9) failing to make sufficient factual findings.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Shandera v. Schultz*, 23 Neb. App. 521, 876 N.W.2d 667 (2016). In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*; *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012).

Domestic matters such as child support are entrusted to the discretion of trial courts. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). An appellate court reviews a trial court's determinations on such issues de novo on the record to determine whether the trial judge abused his or her discretion. *Id.*

## ANALYSIS

### MOTION TO DISMISS FOR LACK OF JURISDICTION

Matthew argues the district court erred by failing to grant his motion to dismiss based on Ashley's failure to establish Cedar County as her domicile prior to Matthew's filing of a paternity

action in Sarpy County. Matthew argues that Ashley and Ruby remained domiciled in Sarpy County in that she had not established a domicile in another county at the time of the filing of his paternity action.

The record demonstrates that Ashley and Ruby left the residence in Sarpy County on November 28, 2014. Ashley moved into her parent's residence that same day, and she remained living there at the time of the motion to dismiss. Matthew filed his complaint for paternity in Sarpy County on December 1, but did not obtain service on Ashley until January 20, 2015. Ashley filed her complaint for paternity in Cedar County on January 2 and obtained service on Matthew that same day. Matthew filed a motion to dismiss the Cedar County action on February 3. The district court for Cedar County entered its order overruling Matthew's motion to dismiss on February 10. It is clear from the order and the record that the district court for Sarpy County dismissed Matthew's paternity action based on a motion to dismiss filed by Ashley in the Sarpy County district court on February 5, reasoning that under Nebraska law, Cedar County was the proper venue for the paternity action. Therefore, when the district court for Cedar County overruled Matthew's motion to dismiss, it was the only court where a paternity action was pending. We also note that our record does not demonstrate that Matthew filed an appeal from the Sarpy County order dismissing his paternity action.

Neb. Rev. Stat. § 43-1411 (Reissue 2016) provides in pertinent part, "A civil proceeding to establish the paternity of a child may be instituted, in the court of the district where the child is domiciled or found . . . ." Domicile is obtained only through a person's physical presence accompanied by the present intention to remain indefinitely at a location or site or by the present intention to make a location or site the person's permanent or fixed home. *Catlett v. Catlett*, 23 Neb. App. 136, 869 N.W.2d 368 (2015). The absence of either presence or intention thwarts the establishment of domicile. *Id.* Once established, domicile continues until a new domicile is perfected. *Id.* At common law, the domicile of a minor is the same as the domicile of the parent with whom he or she lives. *Palagi v. Palagi*, 10 Neb. App. 231, 627 N.W.2d 765 (2001).

It is clear from the record that Ashley was physically present in Cedar County after leaving the residence in Sarpy County as of November 28, 2014. Ashley and Ruby were living with her parents at the time of the hearing with the intention to remain in Cedar County indefinitely. Ashley's affidavit received for purposes of Matthew's motion to dismiss and in support of temporary custody outlined numerous circumstances in Matthew's home which made clear that Ashley no longer would live there and supported her beliefs that it was an inappropriate environment for Ruby. Also admitted into evidence was the order of the Sarpy County district court dated February 4, 2015, dismissing Matthew's complaint. On the record we find the district court did not err in overruling Matthew's motion to dismiss based on lack of jurisdiction.

AWARD OF PHYSICAL AND LEGAL
CUSTODY TO ASHLEY

Matthew asserts the district court erred in awarding Ashley physical and legal custody of Ruby. Matthew argues that the district court should have at least awarded joint physical and legal custody, if not awarded him sole physical and legal custody. Matthew argues that the best interests of the child are satisfied by having both parents in her life.

Child custody is determined by parental fitness and the child's best interests. *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007). When both parents are found to be fit, the inquiry for the court is the best interests of the child. *Id.* In making such a determination under Neb. Rev. Stat. § 42-364 (Reissue 2016), the court may consider factors such as moral fitness of the child's parents; the parents' sexual conduct; the respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy the educational needs of the child; as well as other factors relevant to the general health, welfare, and well-being of the child. *Maska v. Maska, supra*.

The district court found that both parties are fit parents. However, the court found that Ashley had been Ruby's primary caregiver since her birth. The court further found that based on Matthew's work schedule, it would be impractical to award him sole or shared physical custody. The court concluded that an award of sole custody to Ashley was in the best interests of the child.

We agree with the district court that both Ashley and Matthew are fit and clearly love their child. Each party is employed on a full time basis and each has adequate housing. The evidence shows that Ashley has been the primary caregiver and provider for Ruby for the entirety of her life. Numerous witnesses testified that she is an attentive, loving mother. While evidence was adduced addressing Ashley's mental health, there was no evidence that Ashley's mental health condition had in any manner impaired her ability to provide care for Ruby. The evidence further established that Matthew, while involved with Ruby, had not played as active a role as Ashley, particularly in the early stages of Ruby's life. Moreover, the evidence did establish that Matthew works in remote locations for 8 of every 14 days wherein he would not be able to provide care. While he testified that he could transfer to a different job, he had not made an application to do so as of the date of trial. Therefore, there was little certainty in the evidence as to if and when such a change would occur. Accordingly, the district court did not abuse its discretion in determining that it is in the child's best interests for Ashley to have primary physical custody.

With respect to legal custody, under § 42-364, the court may award joint legal custody of minor children when both parents agree to such or if the court specifically finds that joint custody is in the best interests of the minor children regardless of parental agreement or consent. When making custody determinations under § 42-364, if both parties do not agree, the court can award joint custody only if it holds a hearing and makes the required finding that joint custody is in the best interests of the children. See *Kay v. Ludwig*, 12 Neb. App. 868, 686 N.W.2d 619 (2004). The parties did not agree to joint legal custody as each parent sought sole custody. The district court did not find that joint legal custody was in the Ruby's best interests.

The evidence demonstrated that Ashley had been Ruby's primary caregiver since birth. She took Ruby to nearly all of her healthcare appointments. Until shortly before trial, Matthew had not met any of Ruby's healthcare providers. The evidence further demonstrated that the parties have had a difficult time communicating with one another. Little evidence was adduced which indicated any cause for concern as to Ashley's decisionmaking. We further note that under the court's parenting plan the custodial parent is required to notify the noncustodial parent at a meaningful time and freely discuss the issue to be decided before making any decision. Upon the

record before us, we find that the district court did not abuse its discretion in awarding Ashley sole legal custody of Ruby.

CHILDCARE COSTS

Matthew argues the district court erred in not directing Ashley to pay childcare costs or provide proof to Matthew that she has paid childcare costs. Matthew argues that both parties should be required to pay their share of childcare costs after providing written documentation of the charges.

The paternity order states:

[A]ll childcare costs incurred relative to the parties' minor child while *the parties* are at work shall be allocated between *the parties* with the Plaintiff, Ashley Schurman, being responsible for thirty (30%) percent of the childcare costs and the Defendant, Matthew Wilkins, being responsible for seventy (70%) percent of the childcare costs[.]

(Emphasis supplied.) The order next requires Matthew to pay his share of childcare costs within 10 days of being provided with documentation of these costs. No similar 10-day requirement is placed on Ashley should Matthew incur work-related childcare costs.

From the order it is clear both parties are required to pay a portion of work-related childcare costs. While we understand that it is unlikely Matthew will incur work-related childcare costs since his parenting time occurs on his days off, we cannot discount the possibility that on occasion he could incur such costs. We see no reason why Ashley should not be held to the same reimbursement schedule. Therefore, we find that we must reverse the decision of the district court in this respect and remand with directions to include a provision in the decree that Ashley shall pay her childcare costs within 10 days of being provided with written documentation of childcare costs incurred by Matthew.

HOLIDAY PARENTING TIME

Matthew argues the district court erred in setting holiday parenting time that may conflict with his work schedule. Matthew argues essentially that the district court should have not specifically allocated holiday parenting time at all, leaving the regular parenting schedule in place.

Based on the evidence presented it is unclear which holidays Matthew is required to work. The best interests of the child require that holiday parenting time be equal and certain. This allows each parent to spend time with the child on important holidays and family events. Following a set schedule based on Matthew's work could result in consistent denial of holiday parenting time to a party. Moreover, Matthew testified to having significant leave time available to him which could be utilized for holiday parenting time. Therefore, we find that the district court did not abuse its discretion in allotting holiday parenting time.

TRANSPORTATION

Matthew argues the district court erred in requiring him to provide all transportation for his parenting time. Matthew argues it would be equitable if both parties were required to equally share the transportation responsibilities. Based on our review of the record, we find that the district court did not abuse its discretion in determining transportation for parenting time. From our review of

the record and the order of the court, Ashley is bearing the largest share of the day-to-day responsibilities for Ruby's care and rearing. We do not find it onerous to require Matthew to drive Ruby twenty minutes to and from her mother's residence twice per 2-week period.

SUMMER ABATEMENT OF CHILD SUPPORT

Matthew argues the district court erred when it failed to adjust his child support for his parenting time during the summer months. Matthew argues that he should receive a 40-percent reduction of child support during June, July, and August.

The Nebraska Child Support Guidelines provide:

> Visitation or parenting time adjustments or direct cost sharing should be specified in the support order. If child support is not calculated under § 4-212, an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. During visitation or parenting time periods of 28 days or more in any 90-day period, support payments may be reduced by up to 80 percent. The amount of any reduction for extended parenting time shall be specified in the court's order and shall be presumed to apply to the months designated in the order.

Neb. Ct. R. § 4-210. Deviation from the guidelines is left within the discretion of the district court. See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014)

Under the parenting plan, Matthew would receive 36 out of 90 days of parenting time during the summer months. Therefore, Matthew potentially qualifies for a parenting time adjustment in his child support pursuant to Neb. Ct. R. § 4-210. However, we note that the rule does not direct that an adjustment be made, but merely allows for such a possibility. The rule places the issue squarely within the discretion of the court. Here, the court was presented a full picture of the parties' relative financial circumstances as well as their history of financial support for Ruby. Given the totality of these factors, we cannot say that the district court abused its discretion in failing to provide Matthew a child support adjustment based on his summer parenting time.

TELEPHONE/VIDEO CONTACT

Matthew argues the district court erred in failing to award him substantial telephone contact during Ashley's parenting time. Matthew argues that the record is very clear that he wishes to maintain contact with Ruby while she is in Ashley's care. The record reveals that under the temporary order the parties experienced significant difficulties regarding telephonic and video parenting time.

The district court ordered that the noncustodial parent shall have parenting time through telephone contact with Ruby on Thursday every other week between 7 and 7:30 p.m. for not less than 15 minutes, a sharp reduction from the temporary order. The record demonstrates that Matthew attempts to maintain contact with Ruby while he is away for work. Based on our review, we believe the district court abused its discretion in ordering only 1 day of telephone contact during the 10-night period of time that Ruby is in Ashley's possession. Therefore, we believe the current

Thursday telephone contact should remain in place. However, we find that Matthew should have an additional 15-minute period of telephonic parenting time every week.

We further find that Matthew's telephonic contact with Ruby should be by way of Facetime, Skype, or other video-call platform if the parties possess the telephonic capabilities to utilize such a video connection. We recognize that the residence Ashley was moving into may not have internet access. However, we also recognize that her technological connectivity may improve over time. Therefore, we find that on remand the district court should allow for video-call communication between Matthew and Ruby, if available.

We remand this issue to the district court to determine the specific time period when this period of telephonic/video contact should be scheduled and to provide for the possibility of video-call contact.

### NOTIFICATION OF HEALTHCARE APPOINTMENTS

Matthew argues the district court erred in not providing in the parenting plan that the parties must notify one another about healthcare appointments for Ruby. Matthew argues it would be in the best interests of the child if each parent was given adequate notice of nonemergency healthcare appointments.

The parenting plan provides:
> The parent with legal and physical custody of the child . . . shall have the final say in choices regarding the child's . . . medical needs. [T]he custodial parent shall . . . notify the noncustodial parent at a meaningful time in advance of any decision regarding . . . the beginning of healthcare.

While Ashley ultimately has the final decision-making authority, the district court has required her to consult with Matthew in advance of the beginning of healthcare treatment. There was little evidence adduced that Matthew has been actively involved in Ruby's healthcare decisions. Based on the parenting plan, we find that the district court did not abuse its discretion by refusing to include an additional notice provision for healthcare in the parenting plan as it had already provided such a provision.

### SUFFICIENCY OF FINDINGS

Matthew did not specifically argue this assignment of error. Errors must be specifically assigned and argued to be considered by an appellate court. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). Therefore, we will not consider this assigned error.

### CONCLUSION

We conclude that the district court did not err in overruling Matthew's motion to dismiss based on jurisdiction and venue. The court did not err in awarding physical and legal custody to Ashley. The district court scheduled appropriate holiday parenting time. The transportation between parenting time was apportioned appropriately. The court did not err in refusing to allow a summer abatement for child support for Matthew. There was no error in the parenting plan regarding notification of healthcare treatment. Matthew did not specifically assign and argue his assigned error that the district court order was not supported by the evidence. We do find, however,

that the district court erred by not requiring Ashley to pay her share of work-related childcare expenses incurred by Matthew during his parenting time. We also find that the district court erred in providing only one period of telephone contact between Matthew and Ruby during Ashley's parenting time.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.