IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DEY V. MORTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ZACHARY C. DEY, APPELLEE,

V.

TASHA M. MORTON, APPELLANT.

Filed June 9, 2020.    No. A-19-644.

Appeal from the District Court for Seward County: JAMES C. STECKER, Judge. Affirmed.

Sean M. Reagan and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

Linsey A. Camplin, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

This is an appeal from a custody and child support order entered by the district court for Seward County, Nebraska. For the reasons that follow, we affirm the decision of the district court.

## II. BACKGROUND

Tasha M. Morton and Zachary C. Dey were romantically involved between 2011 and 2016. Their daughter Harper was born in June 2014. The parents lived together in Utica, Nebraska, from 2012 until Tasha moved to Wyoming in March 2016. During the almost 2-year period while Tasha was living in Wyoming, the parties established a "two weeks on, two weeks off" parenting schedule which meant exchanging the child on Sundays in North Platte, Nebraska, which was roughly halfway between the parents' homes. In January 2018 Tasha moved to Aurora, Nebraska, and the parties moved the exchanges to York, Nebraska, on Fridays.

In March 2018, Zachary filed a complaint for custody and paternity. In early May, Tasha withheld Zachary's 2 weeks of parenting time, so he immediately filed a motion for temporary custody. The matter was set for hearing on June 4. The court ordered joint legal and physical custody of the child and prescribed parenting time for the other pursuant to a parenting plan. No child support was ordered because the income of each parent was approximately the same. The parents were ordered to cooperate with mediation within 90 days of entry of the temporary order, and they were admonished to cooperate with each other in all their parenting responsibilities.

Trial was held on May 9, 2019. On June 19, the court entered its order granting joint legal custody to both parents, with physical custody awarded to Zachary subject to Tasha's parenting time. Tasha was ordered to pay $718 in child support every month but she would have 8 weeks of summer parenting time subject to Zachary's weekend visitation.

## III. ASSIGNMENTS OF ERROR

Tasha assigns as error the court's award of physical custody to Zachary and the court's failure to include a child support abatement during her summer parenting time.

## IV. STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012).

## V. ANALYSIS

### 1. PHYSICAL CUSTODY

The Parenting Act, Neb. Rev. Stat. §§ 43-2920 through 43-2943 (Reissue 2016) defines "custody" as both "legal" custody and "physical" custody. The court ordered the parents to share "legal" custody of Harper, meaning they share "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health." § 43-2922(11). The court ordered "physical" custody to be with Zachary which means he has "authority and responsibility regarding the child's place of residence and the exertion of continuous parenting time for significant periods of time" subject to Tasha's parenting time as defined by their parenting plan. § 43-2922(20). Tasha alleges the district court has erred in making the physical custody determination.

The district court's order summarized the evidence introduced at trial and found both parents have been actively involved in caring for Harper and that each parent is a fit parent. In that event, when both parents are found to be fit, the inquiry for the court in determining custody then becomes, what is in "the best interests of the child" as defined in the Parenting Act. *Westerhold v. Dutton*, 28 Neb. App. 17, 38, 938 N.W.2d 876, 891 (2020). See *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007).

In determining what is in a child's best interests under § 43-2923, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and the parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character, parental capacity to provide physical care and satisfy educational needs of the child; and many other factors relevant to the general health, welfare, and well-being of the child. See *Westerhold v. Dutton, supra.*

## 2. BEST INTERESTS

### (a) Relationship With Each Parent

The court found each parent had a loving, stable, and mutually beneficial relationship with Harper. Zachary presented evidence which described the daily routine when Harper is in his home. Harper goes to preschool during the workweek and after school, when Zachary is home from work, they feed the dogs, cats, and other farm animals together. They play outside together when the weather permits, they ride horses together, and after supper Zachary and Harper play "learning games," including practicing counting, working on letters, and reading. After a bath, bedtime is 8 p.m. Tasha did not provide evidence of the daily routine in her home but the court found both parents were consistent as to the other in their disciplinary practices, relying on time outs and removal of privileges.

Both parents acknowledged it is in Harper's best interests to have the other parent in her life. The court found on balance that Zachary was more likely to promote the ongoing relationship with the mother and showed more potential as a communicator between the parents. The court was particularly concerned about Tasha's withholding visitation after mediation of the parenting plan failed. Tasha testified withholding parenting time was her lawyer's advice. We cannot say the district court abused its discretion in its assessment and conclusion regarding this evidence.

### (b) General Health and Welfare of Child

The evidence was clear that Zachary has been primarily responsible for Harper's medical care since her birth. Harper's medical providers are all located in Lincoln or in Seward County. Tasha lived in Wyoming for a 2-year period and even though Harper was with her for 2 weeks at a time, there was no evidence that Harper ever saw a medical provider for any purpose in Wyoming, including for her annual physical.

Zachary has lived in the same house since Harper was born. Tasha has moved a number of times, sometimes related to her employment, and sometimes not. At the time of the trial Tasha was living in Aurora and working in Grand Island. Tasha's mother and sister lived to the east and west of her, respectively, in Hampton and Phillips. Tasha's workweek includes two weekends per month, and variable hours during the business days since her employment is in a shopping mall and the mall is open in the evenings. Zachary commutes to Lincoln, Monday through Friday, and works the first shift, 7 a.m. to 3:30 p.m. Both parents testified they have a support system which could be helpful to Harper if there is an emergency during the workday. The court found both

homes are appropriate for Harper but concluded the environment provided by Zachary was more stable than the environment provided by Tasha.

Both parents testified Harper's education is important to them. Harper attends a preschool 5 days a week in Utica which is affiliated with the public school system and feeds students into the kindergarten in the Centennial School District. Harper attends a private preschool 3 days a week in Aurora. The preschool in Utica generally sees more progress from Harper while the preschool in Aurora has suggested Harper delay kindergarten enrollment for another year. Harper has many friends in her preschool class and while Tasha testified Harper has friends in her preschool, most of her playmates in Aurora are her cousins.

Zachary is engaged to a fifth grade teacher who testified Harper shows social readiness for kindergarten since she is able to sit still for periods of time and follow simple directions. Zachary testified he hoped to enroll Harper in the Centennial Public Schools in Utica. This was the school system he attended when he was in school. Tasha hoped to enroll Harper in the Aurora school system because she believed as a larger district it offered better opportunities. Both parents testified they did not believe joint physical custody would be an option going forward since Harper was now school age and the parents lived too far away from each other to trade off custody during the school year and still be able to make it to their jobs on time.

The court found Harper's best interests for her education would be best met by placing Harper in Zachary's home. We cannot say the district court abused its discretion in reaching this decision.

### (c) Other Factors Are Neutral

Harper was 4 years old at the time of the trial and was too young to express a preference based on sound reasoning. There was no credible evidence of neglect or abuse or domestic intimate partner abuse. Both parents acknowledge the social use of alcohol.

We cannot say the district court abused its discretion by ordering physical custody of Harper be placed with Zachary, subject to Tasha's parenting time as defined by the parenting plan attached to the decree.

### 3. CHILD SUPPORT ABATEMENT

During trial both parents were proceeding on the theory that they would each be the physical custodian during the school year with significant visitation for the other during the summer. Both parents submitted payroll information to the court for a determination of the child support obligation owed by each of them. Both parents have similar earnings but the court found Tasha should pay $718 per month in child support since Zachary was awarded custody during the school year.

The Nebraska Child Support Guidelines specifically address a deviation when "visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period." Neb. Ct. R. § 4-210. The rule provides for an abatement of up to 80 percent. Tasha urges this court to find the district court abused its discretion in failing to apply the child support abatement rule during her summer visitation since she will have more than 28 days of consecutive visitation in June and July. See § 4-210.

Tasha's assignment of error, that the district court abused its discretion in not granting an abatement during her summer parenting time, appears from the record before us to be raised here for the first time. We have no way of knowing whether abatement was considered and rejected given the district court's silence on the issue. As a general matter, where an order is clearly intended to serve as a final adjudication of the rights and liabilities of the parties, the silence of the order on requests for relief not spoken to can be construed as a denial of those requests under the circumstances. See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). But in this case, since there is no indication in the record that the district court was ever asked to consider the matter of abatement, we cannot say the court abused its discretion. See *D'Quaix v. Chadron State College*, 272 Neb. 859, 725 N.W.2d 558 (2007). And since neither party could anticipate how the district court would ultimately decide custody and parenting time, it is understandable that there is silence on the matter until this appeal.

While Tasha will undoubtedly incur additional expenses when the child is with her, Zachary's costs in maintaining Harper's permanent home will not simply evaporate. As a consequence, we cannot say that the district court abused its discretion in failing to order an abatement of Tasha's child support obligation in the summer months since even if requested in the first instance, abatements of child support are by definition, "discretionary." See, *Maria T. v. Jeremy S.*, 300 Neb. 563, 915 N.W.2d 441 (2018); *Lucero v. Lucero*, 16 Neb. App. 706, 750 N.W.2d 377 (2008).

## VI. CONCLUSION

We affirm the district court's order of custody with Zachary and child support in the amount of $718 per month to be paid by Tasha, in its entirety, finding no abuse of discretion.

AFFIRMED.